PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HUMILITY OF MARY HEALTH | ) | |
| PARTNERS, *et al.*, | ) | CASE NO. 4:11-cv-00967 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| LOCAL 377 TEAMSTERS, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | | **ORDER** (Resolving ECF Nos. 20 and 22) |

Plaintiff Humility of Mary Health Partners d/b/a St. Elizabeth's Hospital ("HMHP") brings suit against Defendant Local 377 International Brotherhood of Teamsters (Local 377), alleging that arbitration in the matter of Jody Donoghue was conducted improperly, and the award should be vacated.

Pending are counter-motions for summary judgment.  ECF Nos. 20, 22.  For the following reasons, the Court grants Defendant's motion and denies Plaintiff's motion.

**Background**

Jody Donoghue a former neurosurgeon technician for Plaintiff HMHP, was subject to a collective bargaining agreement between Local 377 Teamsters and HMHP governs the terms and conditions of Donoghue's employment.  The relevant provisions of the collective bargaining agreement are:  Article 7 (no employee to be discharged without just cause); Article 9 (arbitrator cannot modify the agreement of the parties and will apply plaintiff's policies and procedures); and Article 20 (describing plaintiff's policies regarding leaves of absence).

(4:11cv967)

Donoghue suffers from Crohn's Colitis and Rheumatoid Arthritis. She was diagnosed with these lifelong conditions by her personal physician, Dr. Joseph Zeno.

Between 2003 and 2009, Donoghue filed eight intermittent leave requests under the Family and Medical Leave Act (FMLA) 29 U.S.C. § 2601, *et seq.* due to the severity of her condition. Plaintiff granted each FMLA request.

On July 28, 2009, Nurse Manager Ginny Ten Eyck, Donoghue's supervisor, met with Donoghue and discussed whether Donoghue would accept a position with the same salary and benefits, in the same building, in order to better accommodate her conditions. ECF No. 1-1 at 3). Donoghue shortly thereafter submitted a note from Dr. Zeno, dated July 28, 2009, that stated, "Not necessary to use Intermittent FMLA while undergoing Humira therapy." *Id.* at p. 4. Plaintiff cancelled plans to re-assign Donoghue, and Donoghue continued in her position.

On April 17, 2010, Donoghue again requested FMLA intermittent leave, citing her lifetime conditions of "Chron's Colitis, Rheumatoid Arthritis." ECF No. 20-2 at 81. Plaintiff's Director of Employee Health, Wellness and Safety, Patty Melnykovich, reviewed the application, and noticed several inconsistencies. She asked Plaintiff's medical director, Dr. Jung Kim, to evaluate the application for leave from a medical perspective, since the July 28 note indicated FMLA leave would no longer be necessary. On April 21, 2010, Dr. Kim reviewed Donoghue's request, concluding there was not enough information to grant it.

Dr. Kim sent a letter to Dr. Zeno, asking for confirmation that Donoghue was still undergoing treatment for a condition which would trigger FMLA leave. After receiving no answer, Dr. Kim instructed Melnykovich to request an Independent Medical Examination (IME), as required under FMLA regulations. 29 C.F.R § 825.307(b). Dr. Thomas Markham conducted

(4:11cv967)

the second IME (performed on Donoghue) based upon the records Dr. Kim provided to him, which included Dr. Zeno's case notes starting from May 2009, Donoghue's FMLA application from April 17, and the letters from Dr. Kim to Dr. Zeno.  Dr. Markham belongs to an independent medical review company with no connection to plaintiff or defendant.  Dr. Markham concluded that based upon the information Dr. Kim sent, Donoghue was not eligible for FMLA leave.

After receiving the results, Dr. Kim asked for another IME.  Plaintiff tried to inform Donoghue of these events by sending a certified letter.  Under 29 C.F.R § 825.307(c), the third IME would require employee approval, and could not be done without a good faith agreement between her and the hospital.  Plaintiff waited fourteen days, after which it checked the Post Office's website to find out whether Donoghue received the letter.  She had not.  Believing its responsibilities under the pertinent regulations to be fulfilled, Plaintiff ordered the third IME.  Dr. Lawrence Kale performed the examination using the same medical records that had been provided to Dr. Markham.

All three independent medical examiners concluded that Donoghue was not suffering from an FMLA "serious health condition," in accordance with 29 C.F.R. § 825.113, so her absences between April and July 2010 were not certified.

On July 9, 2010, Plaintiff terminated Donoghue's employment due to excessive absenteeism.

Donoghue filed a grievance with her union, and agreed to submit the grievance to arbitration.  On February 25, 2011, the parties presented the case to the arbitrator Matthew M. Franckiewicz.  The arbitrator acknowledged he would need to interpret FMLA regulations, which

(4:11cv967)

were incorporated by the collective bargaining agreement by way of the hospital leave policies.

The pertinent FMLA regulations include three primary subsections. Subsection (a), which deals with the sufficiency of medical certification for FMLA leave, states, "If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider."  Subsection (b)(1), which addresses the second medical evaluation, provides, "An employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense."  Finally, Subsection (c) addresses the third medical evaluation, and states, "If the opinions of the employee's and the employer's designated health care providers differ, the employer may require the employee to obtain certification from a third health care provider, again at the employer's expense."  29 C.F.R. 825.307.

These sections fill any gaps in Plaintiff's own leave of absence policy, which states, "In any and all instances . . . where expansion, clarification or interpretation of this policy may be required, the regulations of the FMLA shall prevail."  ECF No. 20-2 at 100.

The arbitrator concluded that the second and third medical opinions could not have resolved the issue of whether Donoghue's absences could be certified under the FMLA for two reasons.  First, he concluded that although 29 C.F.R § 825.307 does not specify what information the employer must provide to the independent examiners, "it was inappropriate for Dr. Kim to provide Dr. Markham and Dr. Kale with only limited information when he knew, or should have known, that there was much more to the picture."  Since the statute is silent, the arbitrator used the principle behind Rule 106 of the Federal Rules of Evidence, that if an incomplete writing or recorded is introduced to prove something, the opposing party may require the admission of the

(4:11cv967)

rest of the writing or recorded statement.  ECF No. 1-1 at 13.

Second, "the Employer had no reasonable basis for doubting Dr. Zeno's most recent

medical certification and thus had no basis for seeking a second or third opinion," citing 29

C.F.R. § 825.307(b)'s requirement that an employer have "reason to doubt the validity of a

medical certification" prior to requiring a second opinion.  The arbitrator concluded that Plaintiff

HMHP did not have "just cause" to terminate Donoghue, as required by the collective bargaining

agreement.  Ultimately, the arbitrator awarded wages and reinstated Donoghue.

On May 13, 2011, Plaintiff filed suit contending that the arbitrator had overstepped his

bounds in deciding the case.

### Standard of Review

In reviewing an arbitrator's decision, the Court may not review the facts as presented and

adduced during arbitration, but rather, whether the arbitrator erred in some cognizable way in

interpreting the bargaining agreement.  *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539,

551 (6th Cir. 2008).  Also, the Court does not consider whether the arbitrator made any errors in

their award based on the merits of the case.  *Michigan Family Resources, Inc. v. SEIU Local

517M*, 475 F.3d 746, 753 (6th Cir. 2007) (*en banc*).  Because the parties submitted to arbitration,

"it is the arbitrator's view of the facts and the meaning of the contract they have agreed to

accept."  *Id.* at 752.

The purview of the court is limited to reviewing three issues: whether the arbitrator acted

"outside his authority" by settling a dispute not being put forth for arbitration; whether he

committed fraud in rendering a decision, or otherwise had a conflict of interest; and whether he

interpreted and applied the actual contract in order to settle the dispute.  *Id.* at 753.

(4:11cv967)

Courts have no authority to disagree with the arbitrator's honest judgment in assigning an award based on the perceived merits of the dispute. However, an arbitrator cannot simply dispense his own brand of industrial justice. *United Paper Workers Int'l Union, Inc., AFL-CIO, et al. v. Misco*, 484 U.S. 29, 38 (1987). The Supreme Court has declared that if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," I may not overturn his decision even if I am "convinced he committed serious error[.]" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001) (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)) (further citations omitted). The Court must decide whether the arbitrator arrived at his decision using the collective bargaining agreement, rather than relying upon his own judgment.

## Discussion

Plaintiff contends the arbitrator overstepped his authority by dispensing his own brand of industrial justice, as opposed to contractual interpretation when he construed 29 C.F.R § 825.307(a) to require the employer to send a specific quantum of records to the examiners.

Defendant contends the arbitrator properly granted the award, as he based the award on his interpretation of Plaintiff's own policies.

The Sixth Circuit requires that an arbitrator use and interpret the language contained in the collective bargaining agreement, to make sure that the final decision is tethered to the factual reality of the dispute. *Michigan Family Resources, supra*, 470 F.3d at 753. An arbitrator likewise cannot commit fraud or act dishonestly, or have a conflict of interest when deciding the case before him. *Id.* Such result would offend any sense of justice, as it lacks a foundation in the facts of the case before arbitration.

(4:11cv967)

In *Michigan Family Resources*, the plaintiff employer sought a vacatur of an arbitration award.  The parties agreed to a collective bargaining agreement that guaranteed a cost-of-living increase.  The district court vacated the initial award, and the defendant appealed, claiming the arbitrator interpreted the collective bargaining agreement, and did not stray from his duty of contractual interpretation.  There, as in the instant case, the plaintiffs were not alleging fraud or dishonesty on the arbitrator's part, but that he made a "serious error" in interpreting the contract. *Id.* at 748.

An arbitrator must interpret the terms and conditions in the collective bargaining agreement to reach his decision.  *Id.*  The collective bargaining agreement, specifically Articles 7, 9 and 20, as noted *supra*, are relevant to the arbitration.

### A. Incomplete Medical Records

Plaintiff asserts that when the arbitrator interpreted the collective bargaining agreement to require a certain amount of medical records, he was in fact applying the Federal Rules of Evidence to a dispute not governed by them.  ECF No. 20-1 at 11.

The arbitrator did not rely upon the Federal Rule of Evidence 106 as legal canon, but applied the principle behind it: that an incomplete amount of information cannot lead to a full understanding of the problem.  He concluded, "[b]oth Dr. Markham and Dr. Kale apparently were unaware that Dr. Zeno had diagnosed his patient with Crohn's Disease and rheumatoid arthritis more than six years previously, and had consistently treated her for these conditions in the interim."  ECF No. 1-1 at 12.  The arbitrator stated that while he could not judge how the missing information could have affected the examinations, thus, he concluded the outcome may have been different had the patient's full medical records been provided. [*Id.* at 13].

(4:11cv967)

Plaintiff does not dispute that the arbitrator correctly found, "with respect to FMLA

certification, the negotiated agreement specifically referenced HMHP policy, which, in turn,

specifically referenced FMLA regulations."  Although the arbitrator did not specifically point this

out, the FMLA regulations do contemplate that a health care provider giving a second or third

opinion would need "all relevant medical information" in order to "render a sufficient and

complete" opinion.  29 C.F.R. § 825.307 (b)(1), (c).

Plaintiff has not shown that the arbitrator was acting outside the scope of his authority,

given that he was interpreting FMLA provisions incorporated into the collective bargaining

agreement by way of Plaintiff's own leave policies.

### B. Reason To Doubt Medical Certification

Plaintiff also finds fault with the arbitrator's conclusion that HMHP did not have

sufficient grounds to request second and third opinions, which under 29 C.F.R § 825.307(b) - (c)

can occur, only if the employer has a "reason to doubt the validity of a medical certification."

Plaintiff HMHP does not deny that the arbitrator was interpreting an FMLA provision,

which was within the arbitrator's scope of inquiry as incorporated into the collective bargaining

agreement by way of the hospital's leave policies.  The arbitrator stated that Dr. Kim could not

have had a reason to doubt the validity of Donoghue's claim, because "Dr. Zeno had been telling

the hospital for years that his patient had Crohn's disease and rheumatoid arthritis, and the

conditions were permanent."  ECF No. 1 at 13.  As Crohn's is an incurable condition, Dr. Kim

had no reason to double check whether her condition was extant, as it could not be any other

way.

(4:11cv967)

Whether the arbitrator was correct in stating that Dr. Kim's reasons did not suffice as a reason to doubt Dr. Zeno's medical certification is beside the point.  As the Supreme Court has stated, the Court must uphold an arbitrator's decision if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority."  *Eastern Associated Coal Corp., supra*, 531 U.S. at 62 (quoting *Misco, supra*, 484 U.S. at 38) (further citations omitted). This is so even where "the arbitrator [has] committed 'serious,' 'improvident' or even 'silly' errors in resolving the merits of the dispute." *Michigan Family Resources, supra*, 475 F.3d at 753 (quoting *Misco, supra*, 484 U.S. at 38-39)).

### Conclusion

The award of the arbitrator was properly entered in light of two primary reasons.  First, the judgment of the arbitrator should be left alone with respect to the facts and merits of the case. Second, the bargaining agreement is silent on the topic of additional IMEs, and instead declares that the FMLA standard should apply.

For the foregoing reasons, Plaintiff's motion for summary judgment, ECF No. 20, is denied and Defendant's motion for partial summary judgment, ECF No. 22, is granted.


IT IS SO ORDERED.


  June 18, 2012                          /s/ Benita Y. Pearson
Date                                    Benita Y. Pearson
                                        United States District Judge